CITY OF ST. PAUL v. PATRICK J. KEOUGH and Another.[1]

December 3, 1909.

Nos. 16,224—(17).

**Report on Diseased Cattle — City Ordinance.**

Section 70 of Ordinance No. 809 of the city of St. Paul construed, and *held* to require a report to the health department by the owner or custodian of all diseased cattle kept by him within the city, without reference to the question whether the owner or custodian does or does not intend to slaughter them for food.

**Violation of Ordinance — Evidence.**

Evidence *held* sufficient to justify the trial court in finding that certain cattle, owned by defendants and kept within the city, were diseased, within the meaning of the ordinance, and that defendants were guilty of a violation of the ordinance in failing to report the same to the health department.

**Question for Jury.**

Whether "foot rot," with which the cattle were affected, was a disease, within the meaning of the ordinance, was, on the evidence, a question of fact for the trial court.

Appeal by defendants from a judgment of the municipal court of St. Paul, Hanft, J., by which defendants were found guilty of violating section 70 of Ordinance 809 of the city of St. Paul in failing

[1]Reported in 123 N. W. 476.

to report to the health commissioner the presence of diseased, over-heated and feverish cattle upon their premises, and were fined $25, and in default of payment were to be committed to the St. Paul workhouse for the term of thirty days. Affirmed.

*Walter L. Chapin,* for appellants.

*J. C. Michael* and *John A. Burns,* for respondent.

BROWN, J.

Defendants were prosecuted in the municipal court of the city of St. Paul for a violation of section 70 of Ordinance No. 809, requiring the owner of all diseased animals to report the same to the city health department, and they appealed from a judgment of conviction.

The ordinance under which defendants were convicted is the general health ordinance of the city, and its various provisions are designed to protect the public health, prevent the spread of contagious diseases, and to free the public market of unwholesome and impure foods, and it provides for these things by numerous comprehensive regulations and restrictions. The section of the ordinance here involved provides as follows:

"Sec. 70. That no cattle shall be killed for human food while in an overheated, feverish or diseased condition; and all such diseased cattle in the city of St. Paul, and the place where found and there diseased, shall be at once reported to the commissioner of health by the owner or custodian thereof, that the proper order may be made relative thereto."

Defendants were the owners of a large herd of cattle, used principally in their business as dairymen, and the charge made against them is that three members of the herd were diseased to their knowledge, and that they failed and neglected to report the same as required by the ordinance. The assignments of error present two questions: (1) Whether the complaint states an offense under the ordinance; and (2) whether the evidence sufficiently shows that the animals were diseased, within the meaning of the ordinance and to the knowledge of defendants.

1. The first contention is that the ordinance, properly construed, requires the report of diseased animals only where it is the intention

of the owner to slaughter them for food, and that, since the complaint. in this prosecution does not charge that the cattle in question were so intended, it fails to state a public offense. We do not sustain this position.

While the construction contended for is plausible, it is too restrictive to be adopted. The manifest purpose of the ordinance was to facilitate the discharge of the duties of the city health department by charging the owner of animals within the city with the duty to report their condition, when diseased, to the end that the department might be advised of the fact and ascertain the nature of the disease, and make such order with reference to the animals as should be found necessary and proper in the interests of public health, and, in part at least, to prevent the very thing that was attempted in this case, viz., the disposal of the animals to local butchers to be slaughtered and placed on the market as food. The gist of the offense created by the ordinance is the failure of the owner to make the required report, and the offense is complete, without reference to the question whether the owner does or does not intend to slaughter the animals for food. · If they are diseased, within the meaning of the ordinance, they must be reported, and a complaint for a violation of that duty need not contain an allegation that defendant intended to slaughter them.

2. Upon the second question, whether the animals in question were diseased within the meaning of the ordinance, the evidence is conflicting. It is not disputed that they were affected with "foot rot," but whether this rendered them diseased and unfit for food the witnesses do not agree. No report of this condition was made, and defendants sold the animals to a local butcher, who slaughtered them upon defendants' premises. The city meat inspector, an officer of the health department, in some way learned of the fact, made investigation, and promptly condemned the carcasses of the animals as unfit for the market. He testified that they were in a diseased condition, produced and brought on by the "foot rot." Other witnesses testified that when cattle were so affected their milk was not used, and they were "dried up." Defendants in this particular case made no use of the milk of these animals, but threw it away. The animals were also by them separated from the rest of the herd, and after they had

become "dry" they were sold to the butcher, as already stated. On the other hand, certain veterinary surgeons, called by defendants, testified that "foot rot" was a local affection, and not a disease, and did not necessarily impair their flesh for food. They conceded, however, that animals so affected might become so emaciated as to render them unfit for that purpose, depending upon the seriousness of the ailment and its duration. While the evidence is somewhat conflicting, a careful consideration of the whole record brings us to the conclusion that it presented a question of fact, and that the evidence is not so conclusive against the findings of the trial court that we may properly interfere.

It does not matter that dairymen were not in the habit of reporting this condition of their animals, or that they were not required to do so by health department officials. The duty to report is created and made absolute by the ordinance, and responsibility for a failure to obey its command cannot be excused by showing an indifferent attitude of public officials towards its enforcement. Under the findings of the court below, the animals in question were diseased, within the meaning of the ordinance, and should have been reported to the authorities, whether they specially required it or not. It would be unsafe to establish a rule that would permit the owner to determine the nature and character of diseases with which his cattle are afflicted, and to report the same if his diagnosis indicates a serious condition, or to withhold it if found, in his judgment, of an unimportant nature. The health department must be left to determine the nature and character of the disease. There is no question but that defendants in the case at bar knew the condition of these animals, namely, that they were suffering from "foot rot," and the scienter was therefore sufficiently established.

Judgment affirmed.